GREENBERG TRAURIG, LLP
MARK D. KEMPLE (SBN 145219)
RYAN C. BYKERK (SBN 274534)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
TEL: 310-586-7700 FAX: 310-586-7800
Email: kemplem@gtlaw.com; bykerkr@gtlaw.com

Attorneys for Defendant Sherwood
Management Co., Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVERNA SHANNON, individually and on behalf of other employees similarly situated and in a representative capacity,<br><br>Plaintiff,<br>v.<br><br>SHERWOOD MANAGEMENT CO., INC. and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO. **'19CV1101 BAS JLB**<br><br>**DEFENDANT SHERWOOD MANAGEMENT CO., INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332(d)(2) (CAFA)**<br><br>Removal Filed: June 12, 2019<br>State Action Filed: Feb. 8, 2019 |

NOTICE OF REMOVAL

ACTIVE 43886250v3

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD PLEASE TAKE NOTICE** that Defendant Sherwood Management Co., Inc., ("Sherwood" or "Defendant") hereby removes the above-captioned action, *LAVERNA SHANNON v. SHERWOOD MANAGEMENT CO., INC.*, Case No. 37-2019-00007617-CU-OE-CTL (the "action") from the California Superior Court for the County of San Diego pursuant to 28 U.S.C. §§ 1332(d) and 1453 on the grounds articulated below.  Defendant hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a) (emphasis added).[1]

## STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  In relevant part, CAFA grants District Courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where the putative class size exceeds 100 persons, and where the amount placed in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs.  As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

---

[1] A notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014); *see also Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2012) ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal. Section 1446(a) requires merely a 'short and plain statement of the grounds for removal.'"). Rather, as the Supreme Court has clarified, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee,* 135 S. Ct. at 553–54. Should Plaintiff properly submit a supplemental motion to remand, Defendant would then respond with evidence.

# VENUE

2. The action was filed in the Superior Court of the State of California for the County of San Diego. Venue properly lies in the United States District Court for the Southern District of California in the Western Division pursuant to 28 U.S.C. §§ 84(d), 1391, and 1441(a).

# PLEADINGS, PROCESS, AND ORDERS, AND COMPLIANCE WITH STATUTORY REQUIREMENTS

3. On February 8, 2019, Plaintiff Laverna Shannon, on behalf of herself and others similarly situated, filed a complaint in the Superior Court for the County of San Diego, captioned *LAVERNA SHANNON v. SHERWOOD MANAGEMENT CO., INC.*, Case No. 37-2019-00007617-CU-OE-CTL ("Complaint"). In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the summons and Complaint, as well as the First Amended Complaint ("FAC"), which represents all of the pleadings, process, and orders in the state court file, are attached hereto as follows: Exhibit A contains the first amended summons and FAC, Exhibit B contains the original complaint, and Exhibit C contains the remainder of the state court file.

# SERVICE ON THE STATE COURT

4. Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the San Diego County Superior Court.

# TIMELINESS OF THE REMOVAL

5. This removal is timely. As the Ninth Circuit Court of Appeal has held and clarified, CAFA removal is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for traditional diversity (including the amount in controversy), and (2) plaintiffs have not served some other "paper" which concedes all elements needed for traditional diversity. *See Roth v. CHA*

*Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125–26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"); *see also Rea v. Michaels Stores Inc.*, 742 F. 3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth* holding; "We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30-day periods are not the exclusive periods for removal. 720 F.3d 1121, 1124–25 (9th Cir. 2013). In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *see also Taylor v. Cox Commc'ns. California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'").

6. Here, neither the Complaint nor the FAC plainly allege all elements needed for removal, and Plaintiff has not served some other "paper" which concedes all elements needed for removal. For example, no amount in controversy is, or has been, stated in any paper received from Plaintiff. This removal is therefore timely.

**ORIGINAL JURISDICTION PURSUANT TO CAFA**

7. This Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official or other governmental entity; (3) the total amount in controversy for all putative class members exceeds $5 million; and (4) there is diversity between at least one putative class

member and one Defendant.  Therefore, CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446.

### The Proposed Class Contains At Least 100 Members

8. Plaintiff's proposed classes contain at least 100 members.  Plaintiff brings this action on behalf of a number of classes and subclasses.  For example, Plaintiff brings this action on behalf of "[a]ny and all persons who are or were employed by Sherwood Management Co., Inc. and who is/was a non-exempt employee at any time since four years prior to the filing of the original complaint in this action until resolution of this lawsuit." [FAC ¶ 17.]  Plaintiff alleges that the "entire membership of each of the Classes and Subclasses is unknown to Plaintiff at this time, however, each is estimated to be greater than 100 individuals . . . ." [*Id.* ¶ 18(a).]  Plaintiff further alleges that Sherwood "has more than 100 retail stores in California." [*Id.* ¶ 7.]

9. Without even considering the membership of the other classes and subclasses, Sherwood employed substantially more than 100 persons as non-exempt employees within four years of the filing of this action.  As such, this putative class alone exceeds 100 persons.

### Defendant are Not a Governmental Entity

10. Defendant is not a state, state official, or other governmental entity.

### Minimal Diversity Exists

11. CAFA's diversity requirement is satisfied when at least one putative class member is a citizen of a state of which a defendant is not a citizen.  28 U.S.C. §§ 1332(d)(2), 1453.

12. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities.  *The Hertz Corp. v. Friend*, 130 S. Ct. 1181,

1192 (2010).  A corporation's principal place of business will typically be where the corporation maintains its headquarters.  *See id*.

13. Sherwood is a corporation incorporated under the laws of the State of California, and has its corporate headquarters, where its officers reside and direct, control, and coordinate the corporation's activities, in Culver City, California. Thus, Sherwood is a citizen of the State of California.

14. For CAFA removal, "[c]itizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction." 28 U.S.C. § 1332(d)(7).

15. Whether measured as of the date of the filing of the Complaint, the FAC, or this removal, one or more members of the putative class were and are citizens of a state other than California (the only state of citizenship of Defendant).

16. Defendant is aware of a putative class member, who at the time of the filing of the Complaint, the FAC, and this Removal, was and is a citizen of the United States and the State of Arizona, and not a citizen of California.  This putative class member was employed by Sherwood in California as a non-exempt worker within the last four years and was eligible for paid vacation and paid sick leave, commissions, commission bonuses and similar compensation during that time.  She moved to the Arizona in January 2017 and remained a resident there from that time until the present. She considers herself a citizen of Arizona and intends to reside in and be a citizen of Arizona indefinitely.  She works in Arizona and lives there with her husband and child. She owns real property in, pays income and property tax to, and registers her automobiles with, the State of Arizona.  She holds bank accounts and has all her personal property in Arizona.  She is registered to vote in, and plans to vote in any and

all upcoming elections, in Arizona, and is a part of a club located in Arizona.  In short, she is citizen of Arizona and not California or any other State.

17. Defendant is aware of another putative class member who at the time of the filing of the Complaint, the FAC, and this Removal, was and is a citizen of the United States and Nevada, and not a citizen of California.  This putative class member was employed by Sherwood in California as a non-exempt worker within the last four years and was eligible for paid vacation and paid sick leave, commissions, commission bonuses and similar compensation during that time.  She moved to Nevada in November 2018 and remained a resident there from that time until the present.  She considers herself a citizen of Nevada and intends to reside in and be a citizen of Nevada indefinitely.  She works in Nevada and lives there with her partner.  She rents a home in Nevada with her partner and pays income tax to the state of Nevada.  All of her personal property and back accounts are located in Nevada.  In short, she is a citizen of Nevada and not California or any other State.

18. Because one or more putative class member is a citizen of a state other than California, and Defendant is a citizen of California only, at least one putative class member is diverse from a defendant and CAFA's minimal diversity requirement is met.

19. Because one or more putative class member is a citizen of a state other than California and Defendant is a citizen of California only, at least one putative class member is diverse from a defendant, and CAFA's minimal diversity requirement is met.

### The Amount Placed in Controversy on the Putative Class Claims Exceeds $5,000,000

20. This jurisdictional element concerns "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corporation*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).  "In

ACTIVE 43886250v3

measuring the amount in controversy, 'a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Korn*, 536 F. Supp. 2d at 1205 (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). It includes potential general and special damages, and penalties, as well as attorney's fees if recoverable by statute or contract. *See, e.g., Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449–50 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 at *4–5 (N.D. Cal., 1997); 28 U.S.C. §§ 1332(d)–(e), 1453, 1711–15.[2]

21. In calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitation—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy"); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *10 (C.D. Cal., June 22, 2012) ("the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint"); *Lara v. Trimac Transp. Services (Western) Inc.*, 2010 WL 3119366, *3 (C.D. Cal., August 6, 2010) ("affirmative defenses . . . may not be invoked to demonstrate that the amount in controversy is actually less than the jurisdictional limits.").

22. Though Defendant concedes no liability on Plaintiff's claims, assuming that all of Plaintiff's allegations are true and that Plaintiff will gain a full recovery on them, Plaintiff's putative class claims place in controversy a sum greater than $5,000,000.

---

[2] Defendant denies any liability to Plaintiff or to the putative classes that she seeks to represent, denies that Plaintiff has stated a claim, and denies that Plaintiff or the putative class members are entitled to recover any of the relief requested in the FAC. Defendant in no way concedes by this removal that Plaintiff's claims and alleged putative classes may be certified for class treatment pursuant to Fed. R. Civ. P. 23.

23. The FAC seeks to allege twenty-one causes of action for: (1) Failure to Pay Vacation Wages; (2) Failure to Comply with Cal. Labor Code §§ 245 et seq.; (3) Failure to Authorize and Permit Paid Rest Periods and Pay Rest Premiums; (4) Failure to Provide Meal Periods and Pay Meal Premiums; (5) Unlawful Deduction and Repayment of Wages; (6) Failure to Pay Regular Wages; (7) Failure to Pay Proper Overtime Wages; (8) Failure to Provide Accurate and Compliant Wage Statements; (9) Failure to Timely Pay Wages upon Separation of Employment; (10) Unfair Competition; (11) Violation of California Labor Code § 227.3 Brought Under the PAGA; (12) Violation of California Labor Code § 245 et seq. Brought Under the PAGA; (13) Violation of California Labor Code §§ 510, 1194, 1198 Brought Under the PAGA; (14) Violation of California Labor Code § 512 Brought Under the PAGA; (15) Violation of California Labor Code § 226.7 Brought Under the PAGA; (16) Violation of California Labor Code §§ 201-203 Brought Under the PAGA; (17) Violation of California Labor Code § 204 Brought Under the PAGA; (18) Violation of California Labor Code §§ 221, 223-224 Brought Under the PAGA; (19) Violation of California Labor Code § 226(A) Brought Under the PAGA; (20) Violation of California Labor Code § 1198 Brought Under the PAGA; and (21) Violation of California Labor Code § 432.2(B) Brought Under the PAGA.

24. <u>Failure to Provide Meal Breaks</u>.  Plaintiff concludes that "Plaintiff and Non-Exempt Class Members were not provided with meal periods in compliance with the law and were not relieved of all duties during <u>any</u> meal periods they did take." [FAC ¶ 90 (emphasis added).]  Plaintiff further concludes that "when Defendants paid meal premiums to Non-Exempt Class Members, it did so at the incorrect rate of pay . . . ." [*Id.* ¶ 93.]  Based on a review of Defendant's records, there were in excess of 150,000 shifts of 6.01 hours or more worked by non-exempt California employees during the Class Period.  Because Plaintiff concludes without qualification that (a) meal periods were not provided, (b) in "any" meal period Plaintiff and class members did take (despite the same not being *provided* by Defendant), they were not relieved of

8

duty, and (c) when meal period premiums were paid they were not in the correct amount, a violation occurred in each of these shifts, resulting in penalties of 1 hour's pay for each such shift. The average hourly rate of pay for these class members during the Class Period was in excess of $10.00. Accordingly, these allegations place in controversy in excess of $1,500,000, as follows: 150,000+ x $10+ = $1,500,000+.

25. <u>Failure to Provide Rest Periods</u>. Plaintiff concludes that "[a]t <u>all</u> times relevant . . . Defendants failed to authorize and permit Plaintiff and Class Members to take paid rest breaks for every four hours worked or major fraction thereof." [FAC ¶ 80 (emphasis added).] Based on Defendant's review of company records, there were in excess of 150,000 shifts of 6.01 hours or more worked by non-exempt California employees during the Class Period. Because Plaintiff concludes that no rest breaks were ever given—she concludes without qualification that "at all times" they were not—she concludes that a violation occurred during each of these shifts, resulting in penalties of 1 hour's pay for each shift. Non-exempt California employees were paid an average hourly wage of in excess of $10.00 during the Class Period. Accordingly, these allegations place in excess of $1,500,000 in controversy, as follows: 150,000+ x $10+ = $1,500,000+.

26. <u>Failure to Pay Vacation Wages</u>. Plaintiff concludes that "<u>All</u> unused, vested vacation time moreover is not paid out at the final rate of pay upon separation of employment including as a result of errors in the calculation of accrual, the use-it-or-lose it/capping policies, and not paying at the final rate of pay." [FAC ¶ 31 (emphasis added).] Plaintiff further concludes that "Defendants did not pay accrued, vested vacation at the correct rate of pay to Plaintiff and Vacation Class Members" *and* "Defendants did not pay all accrued vested vacation at the correct final rate of pay to Plaintiff and Vacation Subclass Members upon their separation of employment." [*Id.* ¶¶ 61-62.]

27. <u>Failure to Timely Pay All Wages Due Upon Separation</u>. Plaintiff also brings a derivative claim for Waiting Time Penalties, stating that Defendant failed to

9
NOTICE OF REMOVAL
ACTIVE 43886250v3

pay Plaintiff and all class and subclass members "whose employment has been separated, all wages on separation or within seventy-two hours after resignation without notice." [FAC ¶ 52.] Plaintiff concludes that this failure was "willful[]," and a consequence of "Defendants' failure to and refusal to pay all wages due and owing, including for overtime, paid vacation and sick time, meal and rest premiums, commissions/bonus commissions, and reporting time pay." [*Id.*] As outlined above, Plaintiff concludes that Defendant never provided non-exempt California employees legally compliant rest breaks or meal breaks, resulting in near-daily failure to pay all wages due, and never properly paid vacation wages. By these conclusions, and her conclusions that Defendant failed to pay wages (including for overtime, paid sick time, commissions, bonus commissions, and reporting time pay), Plaintiff asserts that Defendant failed to pay any class or subclass members all wages due. Pursuant to Labor Code § 203, that places in controversy 30 days' wages for each separated class or subclass member. [*See id.* ¶¶ 128.] Limiting the inquiry only to the non-exempt California employees during the Class Period, based upon Defendant's internal review of company records, in excess of 500 such employees separated from the company in the last three years of the Class Period. Further, based on review of company records, the average amount earned by each such employee per day was in excess of $100. As such, this claim places in excess of $1,500,00 in controversy as follows: 500+ x $100+ x 30 days = $1,500,000+.

28. <u>Inaccurate Wage Statements</u>. Plaintiff also brings a derivative claim for inaccurate wage statements. As with the waiting time claim, this claim is based on Plaintiff's allegations that Defendant failed to pay rest break and meal break premium wages and vacation wages (as well as overtime and other compensation). As noted above, the FAC concludes that wages were unpaid on a daily basis. Plaintiff seeks a statutory penalty of at least $50 for each initial wage statement to a class member, and $100 per wage statement per class member for each subsequent violation. Based upon Defendant's internal review of company records, limiting the inquiry only to the non-

exempt California employees during the Class Period, and applying only the lower penalty rate and capping each person's individual recovery at up to 80 pay periods ($50 x 80 = $4000, the statutory cap), yields in excess of 14,000 wage statements for which Plaintiff concludes a penalty payment is due, and thereby places in controversy an additional $700,000 in penalties as follows: 14,000+ x 50+ = $700.000+. Obviously, application of the higher penalty sought by Plaintiff for subsequent pay periods would yield a higher total.

29. <u>Attorney Fees through the Life of the Litigation</u>.  Further, Plaintiff seeks class-wide recovery of statutory attorney fees.  [FAC, Prayer for Relief at 54:24; 55:3, 11, 19, 23; 56:3, 8, 13, 19; 57:1, 7.]  The amount in controversy includes all reasonable attorney fees not merely through the date of removal, but through resolution of the action.  See *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("Plaintiff insists that attorneys' fees are limited to those accrued at time of removal, maintaining that additional fees are too speculative.  Plaintiff is mistaken. [In *Galt*] [t]he Ninth Circuit clearly . . . anticipated that district courts would project fees beyond removal."); *Ponce v. Med. Eyeglass Ctr., Inc.,* 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (adopting *Simmons* reasoning and holding that "the Court agrees with defendant that a conservative estimate of attorneys' fees likely to be incurred through the conclusion of this case properly factors into the amount in controversy determination"); *Sasso v. Noble Utah Long Beach, LLC,* 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (holding attorneys' fees through trial are properly included in amount in controversy consideration; "post-removal attorneys' fees . . . are part of the 'total amount at stake'"); *Sawyer v. Retail Data, LLC,* 2015 WL 3929695, at *3 (C.D. Cal. Apr. 29, 2015) (same).[3]

---

[3] *See also Pulera v. F&B, Inc.*, 2008 WL 3863489, at *4 (E.D. Cal. 2008) ("While the amount in controversy is determined at the time an action commences, where attorney's fees are recoverable by statute, this determination includes a reasonable estimate of the attorney's fees likely to be incurred."); *Brady v. Mercedes-Benz*, 243 F.

30. Based on past experience, the pendency of this action, the scope of the action, and the issued raised by the pleading, we reasonably estimate that Plaintiff's counsel will seek to recover up to six figures in fees in this action, or more. *See e.g. Garnett v. ADT LLC,* 74 F. Supp. 3d 1332, 1338 (E.D. Cal. 2015) (in determining whether amount in controversy exceeded $5 million for purposes of CAFA removal the court found that that attorneys' fees estimation of 25 percent "is a reasonable one"; "this equates to a fee of approximately $1,016,200. The total amount in controversy thus exceeds $5 million.").

31. <u>Prospective Injunctive Relief</u>. On top of the foregoing, also based on these allegations, Plaintiff seeks "injunctive relief resulting from Defendants' violations of California Law." [FAC ¶ 19(n); *see also id.* ¶ 73, 126, Prayer for Relief at 55:2, 56:15.] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (same). The "amount in controversy" requirement is satisfied where either plaintiff can gain or defendant can lose the jurisdictional amount. *See In re Ford Motor Co./Citibank (South Dakota)*, 264 F.3d 952, 958 (9th Cir. 2001) (holding that, for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may be related to either or any party to the action"). Here,

---

Supp. 2d 1004, 1011 (N.D. Cal. 2002), ("[w]here the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.") (emphasis added); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, at *4 (E.D. Cal. 2008) (the "amount in controversy includes a reasonable estimate of attorneys' fees likely to be incurred"); *Celestino v. Renal Advantage Inc.*, 2007 WL 1223699, at *4 (N.D. Cal. 2007) ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal").

Plaintiff seeks injunctive relief prohibiting Defendant from engaging in practices that supposedly violate the Labor Code.  [FAC ¶ 19(n).]  Even if such relief lasts only so long as the four-year period preceding the filing of this action, Plaintiff's request for prospective injunctive relief would double the amounts placed in controversy on the claims discussed above.

32.     Plainly, the amount placed "in controversy" on these putative class claims exceeds $5,000,000.

### NO ADMISSION

33.     Defendant expressly admits no liability to Plaintiff or to the putative classes she seeks to represent, does not admit that Plaintiff has stated a claim, does not admit that Plaintiff is an adequate class representative for the putative classes that she seeks to represent, and does not admit that Plaintiff or the putative class members are entitled to recover the damages, penalties, and other relief requested in the Complaint or FAC.  Defendant also in no way admits that the instant action satisfies the requirements for class certification.

* * *

This action meets all of CAFA's requirements for removal, and this removal pleading is both timely and proper.  WHEREFORE, the action is hereby removed to this Court from the Superior Court of the State of California, County of San Diego.

Respectfully submitted,

Dated: June 12, 2019                             GREENBERG TRAURIG, LLP


By:     */s/ Mark D. Kemple*
        Mark D. Kemple
Attorneys for Defendant Sherwood Management Co., Inc.