1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LAVERNA SHANNON, *individually and on behalf of other employees similarly situated and in a representative capacity*,

Plaintiff,

v.

SHERWOOD MANAGEMENT CO., INC.,

Defendant.

Case No. 19-cv-01101-BAS-JLB

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 13)**

Plaintiff Laverna Shannon filed this employment class action against Defendant Sherwood Management Co., Inc.   Now before the Court is Plaintiff's motion for preliminary approval of the parties' settlement.  (ECF No. 13.)  The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval.

## I.      Jurisdiction

Before addressing Plaintiff's motion, the Court considers its jurisdiction.   On February 8, 2019, Plaintiff filed her Complaint in San Diego County Superior Court.

(Compl., Notice of Removal Ex. B, ECF No. 1-3.)   After exhausting the notice requirements under California's Private Attorneys General Act ("PAGA"),[1] Plaintiff filed a First Amended Complaint on April 15, 2019. (First Am. Compl., Notice of Removal Ex. A, ECF No. 1-2.)

Plaintiff alleges Defendant does business as Daniel's Jewelers and has more than 100 retail stores in California. (First Am. Compl. ¶ 7.)  Plaintiff worked for Defendant as a non-exempt employee in a sales position. (*Id.* ¶¶ 20–21.)  She brings ten wage-and-hour claims against Defendant, including claims regarding vacation wages, paid sick time, and accurate wage statements. (*Id.* ¶¶ 56–138.)  Plaintiff also brings eleven claims under PAGA based on various purported violations of the California Labor Code. (*Id.* ¶¶ 139–239.)

On June 12, 2019, Defendant removed this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Notice of Removal, ECF No. 1.)  In its Notice of Removal, Defendant alleges the amount in controversy is at least $5,200,000. (*Id.* ¶¶ 24–25, 27–28.)  To reach this valuation, Defendant assumes the First Amended Complaint alleges Defendant violated the law 100% of the time for several of Plaintiff's employment claims. (*See id.*)

On July 15, 2019, Plaintiff filed a motion to remand that challenged Defendant's assertion of jurisdiction, particularly the alleged amount in controversy. (ECF No. 7.)[2]

---

[1] PAGA permits an "aggrieved employee" to "bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009) (citing Cal. Labor Code § 2699(a)).  Before filing a PAGA action, the employee must provide notice of the alleged violations to both the employer and California's Workforce Development Agency.  Cal. Labor Code § 2699(b).  If the agency notifies the employee that it does not intend to investigate—or it fails to respond within a set period—the employee may bring a civil action. *Id.* § 2699.3(a), (a)(2)(A).

[2] In addition, Defendant moved to dismiss or strike Plaintiff's First Amended Complaint. (ECF No. 5.)  The parties asked the Court to analyze Plaintiff's motion to remand before Defendant's pleadings challenge. (ECF No. 4.)  Therefore, the Court terminated Defendant's motion and specified that Defendant's deadline to respond to the First Amended Complaint would be fourteen days after an order is entered on the remand motion. (ECF No. 6.)

1  The parties later asked the Court to continue Plaintiff's motion to allow them to attend
2  mediation. (ECF No. 8.) The Court granted the request. (ECF No. 9.) And on September
3  6, 2019, the parties filed a notice of settlement, leading the Court to terminate the remand
4  motion. (ECF Nos. 10, 11.) Plaintiff later filed her preliminary approval motion on
5  November 6, 2019. (ECF No. 13.)

6    Although the Court terminated Plaintiff's remand motion in light of the parties'
7  settlement, "district courts have an 'independent obligation to address subject-matter
8  jurisdiction.'" *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593
9  (2004) (quoting *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 972 (E.D. Cal.
10  2004)). Therefore, in January 2020, the Court issued an Order to Show Cause ("OSC")
11  that addressed Defendant's Notice of Removal. (OSC, ECF No. 16.) The OSC reviewed
12  CAFA's jurisdictional requirements and then focused on whether Defendant sufficiently
13  alleges that the amount in controversy meets CAFA's $5 million threshold. (*Id.* 3 (citing
14  28 U.S.C. § 1332(d); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015)).)

15    In assessing Defendant's allegations, the Court noted that in employment cases the
16  Ninth Circuit "has paid particular attention to the violation rates used by defendants to
17  establish the required amount in controversy under CAFA." (OSC 3 (citing *Ibarra*, 775
18  F.3d at 1198–99).) For instance, in *Ibarra v. Manheim Investments, Inc.*, the Ninth Circuit
19  held that a complaint alleging only "a 'pattern and practice' of labor law violations" did
20  not support an amount in controversy calculation based on a universal or 100% violation
21  rate. 775 F.3d at 1199 & n.3. Further, the Ninth Circuit stated in an unpublished opinion
22  that the use of language such as "at all relevant times" does not equate to "a 100% violation
23  rate." *Branch v. PM Realty Group, L.P.*, 647 Fed. App'x 743, 746 n.7 (9th Cir. 2016).
24  Several district courts in California have also expressed distaste for allegations of a 100%
25  violation rate. *See, e.g.*, *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1184 (E.D.
26  Cal. 2016); *Cummings v. G6 Hosp. LLC*, No. 19-cv-00122-GPC-LL, 2019 WL 1455800,
27
28

at *2 (S.D. Cal. Apr. 2, 2019); *Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014).

Although Defendant's removal allegations appear to rely upon a 100% violation rate, the Court construed Plaintiff's pleading to allege a "pattern and practice" of violations; meaning, the purported labor violations did not occur during every one of an employee's shifts.  (OSC 4 (citing First Am. Compl. ¶¶ 51–52, 80, 91, 129).)  Defendant's reliance on a 100% violation rate, however, yielded a sum only $200,000 greater than the jurisdictional minimum of $5 million.  (*See* Notice of Removal ¶¶ 24, 25, 27, 28.)  Therefore, even if the Court were to assume a high violation rate for Plaintiff's pattern and practice allegations— such as 60%—the Court reasoned Defendant's jurisdictional allegations "fall well short of the jurisdictionally required amount."  (OSC 5 (citing 28 U.S.C. § 1332(d); *Cavada v. Inter-Continental Hotels Grp.*, No. 19-cv-1675-GPC(BLM), 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019)).)  The Court thus reasoned Defendant "has failed to meet its burden of establishing this Court's jurisdiction under 28 U.S.C. § 1332(d)" and ordered Defendant "to show cause as to why this action should not be remanded for lack of subject matter jurisdiction."  (*Id.*)

In a detailed response filed February 10, 2020, Defendant argues the amount in controversy requirement is satisfied, even assuming a lower violation rate.  (ECF No. 17.)  Defendant provides a thorough analysis of four of Plaintiff's twenty-one causes of action, indicating the amount in controversy easily exceeds $5 million.  (*Id.* at 6–9.)  Defendant also submits a declaration from its Chief Operating Officer that supports Defendant's response by detailing the number of Defendant's employees, their shift count, and their average pay rates for the relevant period.  (Ronci Decl. ¶¶ 3–6, ECF No. 17-1.)  Finally, Defendant submits a proposed Amended Notice of Removal, which augments Defendant's jurisdictional allegations based on its response to the Court's OSC.  (ECF No. 17-2.)

Having reviewed Defendant's response and its revised liability calculations, the Court is persuaded that the amount in controversy exceeded $5 million at the time of removal.  The Court also finds permitting Defendant to amend its Notice of Removal is appropriate.  The proposed Amended Notice does not add a new basis for jurisdiction; it clarifies "'defective' allegations of jurisdiction previously made" regarding the amount in controversy.  *See Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. 3d 1281, 1287 (N.D. Cal. 2019) (quoting *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969)); *see also* 14C Wright & Miller, *Federal Practice and Procedure* § 3733 (Rev. 4th ed., April 2020 update) (explaining that a notice of removal may be amended outside the thirty-day removal period "to set out more specifically the grounds for removal that already have been stated in the original notice," including to "clarify the  jurisdictional amount").

In sum, Defendant's response to the Court's OSC persuasively demonstrates that CAFA's amount in controversy requirement is satisfied.  The Court concludes it has subject matter jurisdiction and will direct Defendant to file its proposed Amended Notice of Removal.

## II.   Preliminary Approval

### A.   Proposed Settlement

Having confirmed jurisdiction exists, the Court turns to Plaintiff's request for preliminary approval of the parties' class action settlement.  Soon after removal, the parties began considering mediation.  (Richard Decl. ¶ 8, ECF No. 13-2.)  To prepare for mediation, they exchanged documents and data, including detailed statistical data about the putative class, policy and procedure documents, and employee compensation information.  (*Id.* ¶ 13.)  The parties participated in a full-day mediation on August 23, 2019, where they reached a settlement after receiving a mediator's proposal.  (*Id.* ¶ 14.)  The parties then finalized their Joint Stipulation of Class Action Settlement and Release ("Settlement

1  Agreement"). (*Id.*; *see also* Settlement Agreement, Richard Decl. ¶ 1, Ex. 1, ECF No. 13-
2  3.)[3]

3      Settlement Class.  As set forth in the Settlement Agreement, the Settlement applies
4  to a Class defined as "all exempt and non-exempt current and former employees of
5  [Defendant] who worked in California at any point during the period of February 8, 2015
6  to August 23, 2019." (Settlement Agreement § 1.)  The parties estimate there are 2,150
7  Class Members. (*Id.* Recitals.)

8      Settlement Fund.  To settle the Class Members' claims, Defendant agrees to deposit
9  $450,000 into a non-reversionary, common fund.  (Settlement Agreement § 8.)  This
10 Settlement Fund will be distributed as follows:

11     (a)    a minimum of $250,000 for payments to Settlement Members, of which 20%
12            shall for tax purposes be deemed wages subject to Form W-2 reporting, and
13            80% shall for tax purposes be deemed non-wages;

14     (b)    a maximum of $135,000 (30% of the Settlement Amount) for the payment of
15            Class Counsel's Attorney Fees;

16     (c)    a maximum of $20,000 for the payment of Class Counsel's Costs;

17     (d)    $22,500 to the State of California for its share of the Settlement Amount
18            allocated for settlement of the PAGA claims;

19     (e)    a maximum of $2,500 for the payment of a Class Representative Service
20            Payment to the named Plaintiff; and

21     (f)    a maximum of $20,000 for Settlement Administration Costs.

22 (*Id.* § 8.)  If the Court approves less than the maximum amounts specified in items (b)–(f),
23 "the unapproved and awarded sums shall be added to the Class Recovery" and shall not
24 "revert to Defendant." (*Id.*)  Defendant has also agreed to separately pay the employer-

25

26

27     [3] Capitalized terms used in this order but not defined herein have the meanings ascribed to them in the Settlement Agreement.

28

side "payroll taxes due upon payment of the 20% allocated to wages payable to Settlement Class Members." (*Id.*)

The Class Recovery will be apportioned among the Settlement Members based on the number of pay periods each individual worked during the Class Period. (Settlement Agreement § 32.) Hence, assuming the Class Recovery is $250,000, the average recovery per class member will be $116.28, although this amount will presumably vary significantly based on an individual's work history during the Class Period. (*See id.* §§ 8, 32.) Class Members will not have to submit a claim to participate in the Settlement. (*Id.* § 34(d).)

Class Notice. To provide notice of the Settlement, Defendant will compile a list of all Class Members from its records, including the number of pay periods each Class Member worked for Defendant. (Settlement Agreement § 4.) Defendant will then provide this list to the Settlement Administrator, who will mail a Notice Packet to all Class Members via regular First-Class U.S. Mail, "using the most current, known mailing addresses identified in the Class List or through a National Change of Address database search." (*Id.* § 23.) "For any . . . envelopes [returned] from this mailing as non-deliverable on or before 30 days after mailing, the Settlement Administrator will use any forwarding address provided to re-mail the returned envelope and, if no forwarding address is provided, will perform a skip trace to identify an address to which the envelope may be forwarded." (*Id.*)

Right to Opt Out or Object and Release. Class Members will have forty-five days after the mailing of the Notice Packets to opt out of the Settlement. (Settlement Agreement §§ 6, 24.) Class Members may do so by submitting a Request for Exclusion to the Settlement Administrator. (*Id.* § 24.) Further, a Settlement Member may object to the Settlement within the same time period. (*Id.* § 25.)

Those Class Members who do not timely opt out of the Settlement will be bound by all the terms of the Settlement. (Settlement Agreement § 24.) Further, upon final approval,

all Settlement Members fully release the claims raised against Defendant in the First Amended Complaint "for the time period of February 8, 2015 through August 23, 2019," including "any claims that could have arisen from the facts and circumstances alleged in" this case. (*Id.* § 16.)  This release also applies to "any claim under the Fair Labor Standards Act ('FLSA')" that could have arisen from the relevant facts and circumstances.  (*Id.*)

## B.   Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, a class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  When the parties to a putative class action reach a settlement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Courts generally employ a two-step process in evaluating a class action settlement. First, the court must assess whether a class exists.  *Staton*, 327 F.3d at 952 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  This inquiry "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*  Second, the court must determine "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Where the parties reach a settlement prior to class certification, courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'"  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).

19cv1101

The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* at 1079. "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

## C.   Analysis

### 1.   Class Certification

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). In this regard, Rule 23 contains two sets of class-certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)).  "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

"These factors must be considered in light of the reason for which certification is sought—litigation or settlement—which 'is relevant to a class certification.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (quoting *Amchem*, 521 U.S. at 619)  Hence, "in deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'" *Id.* (quoting *Amchem*, 521 U.S. at 620).

### i.      Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).  As mentioned, the proposed settlement class consists of approximately 2,050 current and former employees of Defendant.  The Court therefore finds joinder of all class members is impracticable for the purposes of Rule 23(a)(1) and the numerosity requirement is satisfied.  *See id.*

- 10 -

19cv1101

### ii.  Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'"  *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  However, "[a]ll questions of fact and law need not be common to satisfy this rule."  *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*

Plaintiff's First Amended Complaint identifies a panoply of alleged labor violations.  She identifies several examples of common issues of fact and law in her preliminary approval motion:

> (1) whether Defendant's itemized wage statements issued to Plaintiff and Class Members omitted or misreported information required by Labor Code § 226(a), and whether that failure resulted in injury as that requirement is defined under § 226(e);

> (2) whether Defendant had a policy of not providing meal periods to Class Members in conformance with California law as evidenced by Defendant's payment of extra compensation under California Labor Code § 226.7, and whether civil penalties are available despite the § 226.7 payment;

> (3) whether the regular rate of compensation owed under California Labor Code § 226.7 should account for payments of remuneration beyond the base hourly rate of pay (i.e. commission and bonus compensation); and

> (4) whether there may be time-of-use restrictions on paid vacation and sick leave.

(Mot. 16–17.)  As these examples illustrate, there are common questions of law concerning whether certain California Labor Code provisions were violated, including whether statutory remedies and penalties are available.  Further, there are common questions of fact

19cv1101

concerning Defendant's policies, wage statements, and other employment issues. Accordingly, the Court finds the commonality requirement is satisfied for the proposed settlement class.

### iii.   Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Plaintiff is a member of the proposed Class because she worked for Defendant during the relevant period.  (*See* Shannon Decl. ¶¶ 1–2, ECF No. 13-4.)  Hence, she was subject to the employment practices and policies that are the subject matter of this case, such as Defendant's allegedly inaccurate wage statements and purportedly improper restrictions on vacation and sick pay.  There is no indication that Plaintiff's claims are unique to her or that Plaintiff's claims are subject to unique defenses.  Therefore, the Court finds the typicality requirement is satisfied.

### iv.   Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due

- 12 -

process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, Plaintiff has participated in Class Counsel's investigation of the class-wide claims, has engaged in discussions with Class Counsel, has participated in the mediation, and has been educated on the nature of class action litigation and the duties and responsibilities of being a class representative. (Richard ¶ 26; Shannon Decl. ¶¶ 3–5.) She also has chosen competent and experienced counsel, who documents the efforts to vigorously prosecute this case. (Richard Decl. ¶¶ 2–25.) There is no indication that Plaintiff or her counsel has a conflict of interest with the Class Members. Thus, the interests of Plaintiff and the Class Members are aligned. And the Court finds Plaintiff and her counsel will fairly and adequately protect the interest of the Class.

### v.    Predominance and Superiority – Rule 23(b)(3)

#### a.    Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at

1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.").

Plaintiff argues the predominance requirement is satisfied because common questions regarding the Class's "entitlement to the penalties and unpaid wages at issue predominate over individual questions; and each Class Member's potential statutory legal remedies are identical for the alleged violations." (Mot. 20.) Plaintiff's counsel further details these issues in her declaration. (*See* Richard Decl. ¶¶ 18–22.) Many of these issues involve disputed interpretations of the California Labor Code and threshold questions regarding Class Members' entitlement to relief. The Court agrees that there are significant, common issues that predominate and provide a "clear justification" for resolving those questions in a single adjudication. *See Hanlon*, 150 F.3d at 1022; *Vinole*, 571 F.3d at 944. Hence, the Court finds the predominance requirement is satisfied.

### b.   Superiority

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka*, 251 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The following factors are relevant to this analysis:

> (A)   the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  In this context, however, the Court need not determine whether the case "would present intractable management problems" if tried.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 558.

Plaintiff argues class treatment is superior to other available methods for fairly and efficiently adjudicating Class Members' claims because the alternative would be resolving "individual claims for a relatively small amount of damages and penalties."  (Mot. 20.) Further, Plaintiff argues these claims would "prove uneconomic" for individual plaintiffs because "litigation costs would dwarf potential recovery."  (*Id.* (quoting *Hanlon*, 150 F.3d at 1023).)  The Court agrees and finds the superiority requirement is met in this settlement class context.

In sum, the Court provisionally finds the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been met for the proposed settlement class.

## 2.   Preliminary Fairness Determination

Having provisionally certified the settlement class, the Court must next make a preliminary determination of whether the Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).  "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Relevant factors to the fairness determination include, among others:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

- 15 -

1    *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill.*, *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575

2    (9th Cir. 2004).

3              **i.       Strength of the Class's Case and Risk of Further Litigation**

4              Although Plaintiff believes her representative claims are "strong," she notes

5    Defendant vigorously contests liability and has advanced an assortment of defenses to her

6    allegations.  (Mot. 10–14.)  The Court has reviewed the potential hurdles the class would

7    have to overcome and agrees that Plaintiff's case is far from airtight.  (*See* Richard Decl.

8    ¶¶ 16–19.)  Plaintiff also highlights that there is a prior class action settlement that could

9    limit the Class's recovery in this case.  Defendant argued its exposure for non-exempt

10   employees prior to December 1, 2016, is limited by Defendant's payment of $915,000 as

11   part of a court-approved settlement in *Mayra Ramirez v. Sherwood Management Co., Inc.*

12   (L.A. Superior Court Case No. BC609901) to resolve certain employment and PAGA

13   claims.   (Mot. 13; Richard Decl. ¶ 19.)  This prior settlement "could limit or significantly

14   reduce exposure and damages" because some Class Members may have released parts of

15   their claims.  (Richard Decl. ¶ 19.)

16             In addition, further litigation would be risky, burdensome, and expensive.  Plaintiff

17   would have to overcome the motion to dismiss and strike her pleading that Defendant

18   previously filed.  (*See* ECF No. 5.)  Plaintiff also would have to prevail on a contested

19   motion to certify the class, and Defendant likely would file a motion for summary

20   judgment.   Additional uncertainties would await at trial and on a potential appeal.

21   Plaintiff's counsel considered these risks in pursuing an early settlement.  (Richard Decl.

22   ¶ 33.)  The Settlement eliminates many of these risks and seeks to ensure that the Class

23   Members will receive some compensation for their claims.  Hence, having considered the

24   strength of the Class's case and the risks involved in further litigation, the Court finds these

25   considerations weigh in favor of approval of the Settlement.

26

27

28                                              - 16 -

### ii.     Amount of the Proposed Settlement

The settlement amount is $450,000.  Plaintiff's counsel provides an assessment of this amount in her declaration.  (Richard Decl. ¶¶ 20–22.)  This assessment is based on a "reasonable estimation of the range of liability associated with the primary statutory penalty and wage claims in this action."  (*Id.* ¶ 21.)  In short, after providing an explanation for each primary claim, Plaintiff's counsel estimates that the potential recovery on these claims is $3 million.  (*Id.* ¶¶ 21–23.)  Given the barriers to recovery highlighted above, including a prior class action settlement involving Defendant's employees, Plaintiff argues the settlement amount falls within the range of reasonableness. (Mot. 13–15; Richard Decl. ¶¶ 22.)  "The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial." *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008). And the inquiry is not whether the Settlement "could be better," but whether it falls within the range of appropriate settlements.  *See Hanlon*, 150 F.3d at 1027.  The Court finds the settlement amount meets this criterion, particularly because Class Members will receive an "immediate recovery" through this compromise, instead of "the mere possibility of relief in the future, after protracted and expensive litigation."  *See Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Therefore, this factor weighs in favor of approval.

### iii.     Extent of Discovery Completed and Stage of the Proceedings

The court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement.  *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties

1  carefully investigated the claims before reaching a resolution.").  "A court is more likely
2  to approve a settlement if most of the discovery is completed because it suggests that the
3  parties arrived at a compromise based on a full understanding of the legal and factual issues
4  surrounding the case." *Nat'l Rural*, 221 F.R.D. at 527.  But formal discovery may not be
5  necessary where "the parties have sufficient information to make an informed decision
6  about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.
7  1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.
8  2000) (explaining that a combination of investigation, discovery, and research conducted
9  prior to settlement can provide sufficient information for class counsel to make an informed
10  decision about settlement).

11       The parties reached their Settlement in the early stage of these proceedings and
12  before formal discovery.  The parties did, however, exchange "data and documents
13  pertaining to Plaintiff" and the Class Members, including "detailed statistical data," before
14  their mediation.  (Richard Decl. ¶ 13.)  Given that this Settlement was reached in the
15  infancy of this case, but the parties exchanged information to inform their settlement
16  decision, the Court finds this factor is neutral and therefore does not weigh in favor of
17  approval.

18                    **iv.    Experience and Views of Counsel**

19       Because the parties' counsel are the ones most familiar with the facts of the litigation,
20  courts give "great weight" to their recommendations.  *Nat'l Rural*, 221 F.R.D. at 528; *see
21  also In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties
22  represented by competent counsel are better positioned than courts to produce a settlement
23  that fairly reflects each party's expected outcome in litigation.").  Therefore, the plaintiffs'
24  counsel's recommendations "should be given a presumption of reasonableness." *Boyd v.
25  Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

26
27
28

1   Plaintiff's counsel has significant experience with wage-and-hour class actions.
2   (Richard Decl. ¶¶ 2–5.)  She explains her approach to reaching the Settlement, including
3   her consideration of the risk of further litigation and the desire for Class Members to
4   "receive relief in the most expeditious and efficient manner practicable." (*Id.* ¶ 33.)  She
5   ultimately believes the Settlement "to be fair, reasonable, and adequate and in the best
6   interests of Class Members." (*Id.* ¶ 33.)  Accordingly, giving the appropriate weight to
7   Plaintiff's counsel's recommendation, the Court concludes that this factor weighs in favor
8   of approval.[4]

9                           **v.      Attorney's Fee Provision**

10   The Settlement Agreement contemplates an award of attorney's fees and costs to
11   Plaintiff's counsel.  (Settlement Agreement § 11–12.)  "In a certified class action, the court
12   may award reasonable attorney's fees and nontaxable costs that are authorized by law or
13   by the parties' agreement."   Fed. R. Civ. P. 23(h).   "[C]ourts have an independent
14   obligation to ensure that the award, like the settlement itself, is reasonable, even if the
15   parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*,
16   654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).  For a settlement to be fair and
17   adequate, "a district court must carefully assess the reasonableness of a fee amount spelled
18   out in a class action settlement agreement." *Staton*, 327 F.3d at 963.  The Ninth Circuit
19   has also warned courts to look for indicia of possible collusion, including a "kicker"
20   provision—where any fees not awarded revert to the defendant—and a "clear sailing
21   agreement"—where the defendant agrees to not object to fees up to a certain amount. *See*
22   *Bluetooth*, 654 F.3d at 947.

23   The Settlement Agreement defines "Class Counsel's Attorney Fees" as "fees agreed
24   upon by the Parties and approved by the Court for Class Counsel's fees incurred in . . . the

25

26
27          [4]  The Court will consider a related factor, the reaction of the class to the settlement, at the final
      approval stage after Class Members have had an opportunity to weigh in on the Settlement.

28                                          - 19 -

action . . . and which shall not exceed $135,000.  (Settlement Agreement § 11.)  "Defendant agrees not to challenge or oppose Class Counsel's motion or application for attorneys' fees up to that amount."  (*Id.*)  As mentioned above, the common fund is non-reversionary, and any fees that are not awarded to Plaintiff's counsel will flow to the Class, not Defendant.  (*Id.* § 8.)  Therefore, the Settlement Agreement does not contain a kicker provision, but it does contain a clear sailing provision for a fee request up to $135,000.  "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class."  *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).  Consequently, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id.* (quoting *Staton*, 327 F.3d at 954).

In scrutinizing the clear sailing provision, the Court notes that a maximum award of $135,000 would be 30% of the common fund.  Generally, when applying the percentage of recovery method to determine fees, an attorney's fees award of "twenty-five percent is the 'benchmark' that district courts should award."  *Pac. Enters.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  That said, fees often range between "20% to 33 1/3% of the total settlement value."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Therefore, although the anticipated fee award of 30% would exceed the benchmark, it still may be a reasonable award.

Even so, the Court will further scrutinize the fee award because the earlier a case settles, the greater the concern that a percentage award may amount to a windfall for counsel.  *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that the case was settled early in the litigation supports the district

court's ruling [not to award class counsel's 25 percent fee award request because] the 25 percent benchmark of the percentage-of-the-fund approach might very well have been a 'windfall.'").  The Court will thus use the lodestar method to cross-check the fee award at final approval "to ensure a fair and reasonable result."  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 668 (E.D. Cal. 2008).  Further, the Court will require Plaintiff's counsel to submit her billing records to allow the Court to adequately use the lodestar method as a cross-check.  Finally, the Court will advance the proposed deadline for Plaintiff's counsel to file a motion for attorney's fees to allow Class Members more time to review the request before the deadline for objections to the Settlement.

Accordingly, although the potential fee award will be 30% of the settlement fund and the Settlement Agreement contains a clear sailing provision, these considerations do not doom the Settlement.  The Court will further scrutinize the reasonableness of the fee award at the final approval stage.

On balance, having considered the factors relevant to the preliminary fairness determination, the Court finds that the Settlement falls within the range of reasonableness meriting possible final approval.  The Court therefore preliminarily approves the Settlement and the terms and conditions set forth in the Settlement Agreement, subject to further consideration at the fairness hearing.

### 3.    Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time

19cv1101

and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

Here, the proposed notice describes the litigation, the terms of the Settlement, and each Class Member's rights and options under the settlement.  (Notice of Class Action Settlement, Settlement Agreement Ex. A, ECF No. 13-3.)  As outlined above, the Settlement Administrator will distribute Notice Packets to each Class Member through First-Class U.S. Mail "using the most current, known mailing addresses identified in the Class List or through a National Change of Address database search."  (Settlement Agreement § 23.)  And having reviewed the proposed notice, the Court finds that the method and content of the notice complies with due process and Rule 23; the notice is the best notice practicable under the circumstances; and the notice shall constitute due and sufficient notice to all persons entitled to notice of the Settlement.  Therefore, the Court approves the form and content of the proposed notice as set forth in Exhibit A to the Settlement Agreement.

## III.   CONCLUSION

In light of the foregoing, the Court **ORDERS** Defendant to file its Amended Notice of Removal no later than **May 22, 2020**.  Further, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement (ECF No. 13).  Accordingly, the Court **ORDERS** the following:

1.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court conditionally certifies the following class for settlement purposes only:  all exempt and non-exempt current and former employees of Sherwood Management Co., Inc. who worked in California at any point during the period of February 8, 2015, to August 23, 2019.

19cv1101

2.     The Court appoints Plaintiff Laverna Shannon as Class Representative of the Class.

3.     The Court appoints Diane E. Richard, Esq. of Richard Law, P.C. as Class Counsel.

4.     The Court preliminarily approves the Settlement Agreement and the terms and conditions of the Settlement set forth therein, subject to further consideration at the fairness hearing.

5.     The Court will hold a fairness hearing on **Monday, September 21, 2020, at 10:30 a.m.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, 221–333 West Broadway, San Diego, CA 92101, for the following purposes:

(a)     finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, and thus, whether the claims of the Class should be certified for purposes of effectuating the Settlement; determining whether the proposed Settlement of the action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

(b)     considering any motion of Class Counsel for an award of attorney's fees and costs;

(c)     considering any motion of Plaintiff for a service award;

(d)     considering whether the releases by Class Members as set forth in the Settlement Agreement should be provided; and

(e)     ruling upon such other matters as the Court may deem just and appropriate.

6.     The Court may adjourn the fairness hearing and later reconvene such hearing without further notice to the Class Members.

19cv1101

7.      Any motion in support of the Settlement and any motion for an award of attorney's fees and costs or Plaintiff's service award must be filed with the Court no later than the dates specified below.  Plaintiff's counsel must submit her billing records with any fee motion.  Any opposition must be filed no later than fourteen days after the motion is filed, and any reply must be filed no later than twenty-one days after the motion is filed. All other deadlines in the action are stayed pending the fairness hearing.

8.      The Court appoints CPT Group as the Settlement Administrator.

9.      The Court approves the form of the "Notice of Class Action Settlement" ("Notice") (Settlement Agreement Ex. A, ECF No. 13-3 at 24–30) and directs the parties and the Settlement Administrator to carry out their obligations under this order and the Settlement Agreement.  The Court authorizes the mailing of the Notice to the Class Members by the deadline below.

10.      The Court incorporates the procedures for requesting exclusion from the Settlement and objecting to the Settlement as set forth in the Settlement Agreement and the Notice to Class Members.

11.      The Court specifies deadlines for the Settlement and approval process as follows:

| Deadline | Event |
| --- | --- |
| May 26, 2020 | Deadline for Defendant to provide Settlement Administrator with the Class List.  (*See* Settlement Agreement § 22.) |
| June 16, 2020 | Deadline for Settlement Administrator to mail Notice to Class Members.  (*See* Settlement Agreement § 23.) |
| June 29, 2020 | Deadline for Class Counsel to file motion for attorney's fees and costs. |
| July 31, 2020 | Last day for Class Members to submit written objections to the Settlement. (*See* Settlement Agreement §§ 6, 25.) |

19cv1101

| July 31, 2020 | Last day for Class Members to submit a written Request for Exclusion to be excluded from the Settlement.  (*See* Settlement Agreement §§ 6, 24.) |
| August 14, 2020 | Last day for Settlement Administrator to provide parties with report.  (*See* Settlement Agreement § 28.) |
| August 21, 2020 | Deadline for Class Counsel to file Motion for Final Approval of Settlement. |
| September 11, 2020 | Last day for filing any responses to any objections. |
| September 21, 2020, at 10:30 a.m. | Fairness Hearing. |

**IT IS SO ORDERED.**

**DATED: May 12, 2020**

Hon. Cynthia Bashant
United States District Judge

- 25 -

19cv1101